# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CURTIS WEATHERS and ROBERT CAHILL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:16-CV-00215-HFS ) |
| GEORGIA-PACIFIC, LLC, et al., | ) ) ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiffs Curtis Weathers and Robert Cahill state and allege the following for their First Amended Complaint against Defendants.

## PARTIES

1. Plaintiff Curtis Weathers is a resident of the State of Kansas at the address set forth above. He is African-American. Plaintiff Weathers was formerly employed by Defendants.

2. Plaintiff Robert Cahill is a resident of the State of Missouri at the address set forth above. He is African-American. Plaintiff Cahill was formerly employed by Defendants.

3. Defendant Georgia Pacific, LLC is a foreign limited liability company authorized to do business in the State of Missouri. At the time of the unlawful employment practices alleged herein, Georgia Pacific, LLC employed six or more persons within the State of Missouri, such that it is an "employer" as defined in section 213.010.7, RSMo. At all times relevant herein, Georgia Pacific, LLC was Plaintiffs' employer as defined by section 213.010.7, RSMo.

4. Defendant Georgia Pacific Corrugated, LLC is a foreign limited liability company authorized to do business in the State of Missouri. At the time of the unlawful employment

1

practices alleged herein, Georgia Pacific Corrugated, LLC employed six or more persons within the State of Missouri, such that it is an "employer" as defined in section 213.010.7, RSMo. At all times relevant herein, Georgia Pacific Corrugated, LLC was Plaintiffs' employer as defined by section 213.010.7, RSMo.

5. Defendant Georgia Pacific Corrugated II, LLC is a foreign limited liability company authorized to do business in the State of Missouri. At the time of the unlawful employment practices alleged herein, Georgia Pacific Corrugated II, LLC employed six or more persons within the State of Missouri, such that it is an "employer" as defined in section 213.010.7, RSMo. At all times relevant herein, Georgia Pacific Corrugated II, LLC was Plaintiffs' employer as defined by section 213.010.7, RSMo.

**6.** Defendant Tom Rovito is and individual residing in the State of Missouri. At all times relevant herein, Defendant Rovito was an employee of Georgia Pacific, LLC, Georgia Pacific Corrugated, LLC and Georgia Pacific Corrugated II, LLC, and was Plaintiff Curtis Weathers' supervisor/manager, and with respect to the actions taken towards Plaintiff Weathers and other African-American employees as described herein was acting directly and in the interest of Defendants Georgia Pacific, LLC Georgia Pacific Corrugated, LLC and Georgia Pacific Corrugated II, LLC, such that Defendant Rovito is an "employer" as defined by the Missouri Human Rights Act, section 13.010.7, RSMo.

**JURISDICTION AND VENUE**

7. This action alleges that Defendants engaged in unlawful discriminatory practices in violation of the Missouri Human Rights Act, section 213.010, *et seq*.

8. Plaintiffs timely filed their Charges of Discrimination against Defendants with the Missouri Commission on Human Rights (MCHR) within 180 days of the acts complained of,

alleging discrimination on the basis of race based on the events described in this Petition. Ex. A, Ex. B. Ex. C.

9. Plaintiffs have filed suit within 90 days of receiving their Notice of Right to Sue. A copy of the notices are attached hereto as Exhibits D, E and F, and incorporated herein by reference.

10. Jurisdiction and venue are proper in this Court because the unlawful discriminatory practices alleged herein occurred in Clay County, Missouri, where Plaintiffs were first injured by Defendants' unlawful conduct.

## FACTS COMMON TO ALL COUNTS

1. Plaintiffs Weathers and Cahill are African-American males. Both Plaintiffs were employed by Defendants at the Georgia Pacific location at 8600 NE 38th Street, Kansas City, Missouri, 64141.

2. This Petition is based on Defendants' unlawful treatment of Plaintiffs. Defendants are engaged in a pattern and practice of discriminating against African-American employees on the basis of race and treating white employees more favorably than African-American employees.

3. Plaintiffs have suffered discrimination and damages as a result of Defendants' practice of discriminating against African-American employees on the basis of race and treating white employees more favorably than African-American employees.

## DISCRIMINATION AGAINST PLAINTIFF WEATHERS

4. Plaintiff Weathers began his employment with Georgia Pacific in 2009. At the time of the termination of Plaintiff Weathers' employment, Defendant Tom Rovito was his supervisor.

3

5. While Plaintiff Weathers was employed, he held the position of clamp truck operator. During the past few years of Plaintiff's employment, he experienced criticism, discipline and other adverse treatment based on his race. Much of the treatment he experienced was carried out by his supervisor, Defendant Rovito.

6. For example, in one instance, Plaintiff Weathers was performing his job duties and Rovito came up to Plaintiff Weathers and told Plaintiff Weathers to empty a peel cart for another employee. Plaintiff Weathers was concerned that if he stopped his duties to empty the peel cart, his machine would stop from lack of paper. Plaintiff Weathers told Rovito he would empty the peel cart, but that it would have to be after he finished the job he was doing.

7. Rovito refused to allow Plaintiff Weathers to finish his job and told Plaintiff Weathers to empty the peel cart immediately. Rovito threatened Plaintiff Weathers by saying something like, "If you don't follow my instructions I will terminate you." Rovito was yelling at Plaintiff Weathers and threatening him, even though Plaintiff Weathers never refused to empty the peel cart. Other white employees were available to empty the peel cart, but Rovito was not asking them or yelling at them.

8. Plaintiff Weathers told Rovito he did not appreciate being threatened and asked why he was being threatened. Rovito told Plaintiff Weathers to hand over his badge and radio because Plaintiff Weathers was being suspended pending an investigation.

9. Defendants issued Plaintiff Weathers a disciplinary notice even though he never refused to empty the peel cart. Plaintiff Weathers was also disciplined for raising his voice at Rovito. Rovito was not disciplined for raising his voice at Plaintiff. After the write up, Plaintiff Weathers tried to avoid Rovito for fear of being wrongfully accused of misconduct.

4

10. In late September 2014, Plaintiff Weathers was moving rolls with a clamp truck and got up off the truck to inspect some damage on the rolls. The truck started to tip forward and fell to the ground. The truck apparently was off balance because of some mechanical problems.

11. Plaintiff Weathers reported the tip over to Rovito, and the plant manager was notified. Maintenance workers came to the truck to try and see how to turn it back upright. The plant manager told Plaintiff Weathers everything would be fine.

12. However, when Plaintiff Weathers showed up for work the next day, the manager on duty told Plaintiff Weathers his employment had been suspended, even though plant manager previously told him everything would be fine. The manager showed Plaintiff Weathers an email from Defendant Tom Rovito to the plant manager telling the plant manager that Plaintiff Weathers needed to be disciplined and suspended. Plaintiff Weathers' badge was taken and he was suspended.

13. This incident was a continuation of the same, systemic discriminatory treatment Plaintiff Weathers has experienced based on his race, and part of a series of similar and interrelated events and instances of discrimination that have occurred at the hands of Defendants.

14. On information and belief, there have been at least two incidents in the past few years where white employees tipped a clamp truck over but were not terminated or disciplined. In another instance, when a white employee was not able to do his job, he was not disciplined and was instead moved to a different job so that it would be "easier" for him.

15. On or about October 3, 2014, Plaintiff Weathers was told his employment had been terminated.

**DISCRIMINATION AND RETALIATION AGAINST PLAINTIFF CAHILL**

16. Plaintiff Cahill began his employment with Georgia Pacific in 1999. At the time

5

of the some of the employment actions complained of herein, Terry Johnson was Plaintiff Cahill's supervisor.

17. During Plaintiff's employment, Defendants engaged in a practice of discriminating against African-American employees, including Plaintiff Cahill, on the basis of race and treating white employees more favorably than Plaintiff Cahill and other African American employees. The harassment Plaintiff Cahill experienced was a series of similar and interrelated events that have occurred over the years.

18. During his employment, Plaintiff Cahill was employed as a general laborer and also as a press operator. During the last ten years or so of Plaintiff Cahill's employment, he consistently experienced criticism, discipline and other adverse treatment based in part on his race. Plaintiff Cahill also witnessed discrimination against other African-American employees.

19. In addition, Plaintiff Cahill observed that Defendants applied the discipline policy more frequently to African -American employees.

20. Plaintiff Cahill has been singled out and treated differently from time to time by white workers, including supervisor Terry Johnson. More than once, Plaintiff Cahill was written up for things white employees were not written up for. Plaintiff Cahill complained to Mr. Johnson and told him Plaintiff believed he was written up for something white employees were also doing, but the white employees were not written up. Plaintiff Cahill told Mr. Johnson he believed it was harassment and discrimination. To Plaintiff's knowledge, neither Mr. Johnson nor the company took any action to investigate his complaints or stop the mistreatment.

21. In another instance, Plaintiff Cahill reported discrimination to the Georgia Pacific hotline, but to his knowledge there was no follow up or investigation into his complaints.

6

Plaintiff Cahill was never informed of the specific action taken (if any) in response to his complaints.

22. The most recent incident of discrimination that occurred as part of this systemic discrimination over the years occurred on or about January 24, 2015. That day, Plaintiff Cahill was working on a print machine, having to perform two jobs himself. Mike Hunt, a white employee, was supposed to be helping Plaintiff Cahill and making sure things were working correctly, but he was not present at the machine working.

23. The ink dried up while Plaintiff Cahill was working on the machine, and Terry Johnson wrote Plaintiff Cahill up for it. Because the white employee was on Plaintiff Cahill's team and was supposed to be helping, he should have been written up as well.

24. On information and Belief, the white employee was not written up. However, Plaintiff Cahill's write up stayed in place. This incident was just a continuation of the same, systemic racially discriminatory treatment Plaintiff Cahill has suffered.

25. Over the years, Plaintiff Cahill has seen the company terminate and discipline more African-American workers than white workers. He has also seen other black workers being treated differently than white workers. In mid-2015 Plaintiff Cahill filed a charge of discrimination against Defendants with the Missouri Commission on Human Rights and Equal Employment Opportunity Commission describing the foregoing discrimination.

26. Defendants were served with notice of Plaintiff Cahill's Charge of Discrimination.

27. At the end of October or beginning of November 2015, after Defendants received notice of Plaintiff Cahill's Charge of Discrimination, Defendants told Plaintiff he was being terminated for an incident that occurred on October 28, 2015 where Plaintiff allegedly entered a

7

machine without first "locking out" the machine. On information and belief, Defendants actions were taken in retaliation for Plaintiff's Charge of Discrimination.

28. In December 2015, Defendants allowed Plaintiff Cahill to return to work, but Defendants again started criticizing Plaintiff and his job performance.

29. On or about December 30, 2015, the machine Plaintiff Cahill was working on was having a mechanical problem, so Plaintiff's supervisor and a maintenance worker came to look at the machine. The maintenance worker was a white employee.

30. The white maintenance worker proceeded to reach into the machine and "break the plane" without first locking out the machine. The white employee was engaged in the same type of conduct Defendants criticized Plaintiff Cahill for when it took steps to terminate his employment in October and November.

31. Plaintiff Cahill's supervisor was standing right there and saw the white worker reach into the machine without locking it out first. This same supervisor was in the November meeting where Plaintiff was told he was being terminated for not locking out the machine.

32. However, this time, neither the supervisor nor the company disciplined, suspended, or terminated the white employee for reaching into the machine. This confirmed for Plaintiff Cahill that the discipline he received in November, for the same conduct, was based on his race and done in retaliation for his complaints of discrimination.

33. On information and belief, the white worker has not been disciplined or suspended as of the date of this charge.

34. On or about January 5, 2016, Defendants again told Plaintiff Cahill he was being terminated. Plaintiff believes his termination was part of the ongoing race discrimination he experienced and was also done in retaliation for his prior complaints of discrimination.

8

35. On information and belief, white employees are not disciplined or terminated in a similar manner. For example, in the days before Plaintiff's termination, a white employee was having difficulty with the machines and experienced quite a bit of down time, but was not fired or disciplined.

### COUNT I – PLAINTIFF WEATHERS
### RACE DISCRIMINATION – MISSOURI HUMAN RIGHTS ACT

36. Plaintiff incorporates the allegations foregoing paragraphs as through fully set forth herein.

37. Plaintiff Weathers is and was capable of performing the essential duties of his employment positions and did perform those duties for all positions held.

38. Defendants have orchestrated a pattern and practice of discriminating against African-American workers and forcing African-American workers out of the workplace.

39. Plaintiff Weathers' race was a contributing factor is the criticism, discipline, termination and other employment actions taken against him, as more fully described above.

40. Defendants' acts of criticizing Plaintiff Weathers, threatening him, suspending him and ultimately terminating his employment constitute unlawful employment practices in violation of section 213.055, RSMo., because Plaintiff Weathers' race was a contributing factor therein.

41. Defendants knew or should have known of the discrimination against Plaintiff Weathers as described above and based on his race failed to implement prompt and appropriate corrective action.

42. Defendants' actions as set forth above constitute an intentional pattern and practice of discrimination based on race in violation of the Missouri Human Rights Act.

9

43. Defendants maintained inadequate written policies, procedures or guidelines with respect to discrimination based on race.

44. As a direct result of Defendants' violations of the Missouri Human Rights Act, Plaintiff Weathers has sustained damage including, but not limited to, lost wages, lost benefits, humiliation, emotional distress, and loss of future income and opportunity, and Plaintiff Weathers is reasonably certain to suffer from such damages in the future..

45. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiff Weathers and others, entitling Plaintiff Weathers to an award of punitive damages.

WHEREFORE, Plaintiff Weathers prays for judgment in his favor and against Defendants for his fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for his costs, for reimbursement or front pay, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II – PLAINTIFF CAHILL
## RACE DISCRIMINATION – MISSOURI HUMAN RIGHTS ACT

46. Plaintiff incorporates the allegations foregoing paragraphs as through fully set forth herein.

47. Plaintiff Cahill is and was capable of performing the essential duties of his employment positions and did perform those duties for all positions held.

48. Defendants have orchestrated a pattern and practice of discriminating against African-American workers and forcing African-American workers out of the workplace.

49. Plaintiff Cahill's race was a contributing factor is the criticism, discipline, termination and other employment actions taken against him, as more fully described above.

50. Defendants' acts of criticizing Plaintiff Cahill, threatening him, disciplining him, and ignoring his complaints and reports of discrimination, and ultimately terminating his employment, constitute unlawful employment practices in violation of section 213.055, RSMo., because Plaintiff Cahill's race was a contributing factor therein.

51. Defendants knew or should have known of the discrimination against Plaintiff Cahill as described above and based on his race failed to implement prompt and appropriate corrective action.

52. Defendants' actions as set forth above constitute an intentional pattern and practice of discrimination based on race in violation of the Missouri Human Rights Act.

53. Defendants maintained inadequate written policies, procedures or guidelines with respect to discrimination based on race.

54. As a direct result of Defendants' violations of the Missouri Human Rights Act, Plaintiff Cahill has sustained damage including, but not limited to, lost wages, lost benefits, humiliation, emotional distress, and loss of future income and opportunity, and Plaintiff Cahill is reasonably certain to suffer from such damages in the future..

55. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiff Cahill and others, entitling Plaintiff Cahill to an award of punitive damages.

WHEREFORE, Plaintiff Cahill prays for judgment in his favor and against Defendants for his fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for his costs, for reimbursement or front pay, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III – PLAINTIFF CAHILL
## RETALIATION – MISSOURI HUMAN RIGHTS ACT

56. Plaintiff incorporates the allegations foregoing paragraphs as through fully set forth herein.

57. During Plaintiff Cahill's employment, Plaintiff engaged in protected activity by filing a Charge of Discrimination against Defendants with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission.

58. Defendants retaliated against Plaintiff Cahill by failing to conduct an adequate investigation and by failing to take appropriate corrective action in response to his objections and complaints.

59. Defendants further retaliated against Plaintiff Cahill by writing him up, accusing him of poor performance, disciplining him, suspending his employment, threatening him with termination and ultimately terminating his employment.

60. Plaintiff Cahill's protected conduct was a contributing factor in Defendants' criticism, discipline, failure to investigate and protect Plaintiff, and the termination of Plaintiff's employment, and Defendants' conduct constitutes retaliation against Plaintiff for his reports of discrimination, in violation of the Missouri Human Rights Act, section 213.010, RSMo., *et. seq.*

61. Defendants' conduct constitutes intentional retaliation against Plaintiff Cahill, with malice, and/or reckless disregard of Plaintiff's known rights.

62. Defendants' actions as set forth above constitute intentional pattern and practice of retaliation based on reports of Race discrimination, all in violation of the Missouri Human Rights Act, section 213.010, RSMo., *et seq*.

63. As a direct and proximate result of Defendants' unlawful acts of retaliation, Plaintiff Cahill has suffered damages including, but not limited to, economic loss in the form of

lost wages and benefits, future wages and lost earnings, harm to reputation and job record, and garden variety emotional and mental distress.

64. Defendants' conduct was outrageous because of Defendants' evil motive or reckless indifference to the rights of Plaintiff Cahill, thereby entitling Plaintiff Cahill to punitive damages in an amount that will punish Defendants and will deter Defendants and others from like conduct.

WHEREFORE, Plaintiff Cahill prays for judgment in his favor and against Defendants for his fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for his costs, for reimbursement or front pay, and for such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:  /s/ Bryan T. White
   Gene P. Graham, Jr.    MO 34950
   Bryan T. White         MO 58805
   19049 East Valley View Parkway
   Independence, Missouri 64055
   (816) 373-9080 Fax: (816) 373-9319
   ggraham@wagblaw.com
   bwhite@wagblaw.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed via the Court's CM/ECF electronic filing system this 1st day of April, 2016, which sent notification to the following:

Michael Blumenthal
Alex P. Aguilera

SEYFERTH BLUMENTHAL & HARRIS, LLC
4801 Main Street, Ste. 310
Kansas City, Missouri 64112

ATTORNEYS FOR DEFENDANTS

                                                                        /s/ Bryan T. White     
                                                               Attorney for Plaintiff